Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUGO RODRIGUEZ,<br><br>    Plaintiff,<br><br>v.<br><br>ICONIX BRAND GROUP, INC., BOB GALVIN, JUSTIN BARNES, PETER CUNEO, DREW COHEN, and JAMES MARCUM,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

<b>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS</b>

Plaintiff Hugo Rodriguez ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

<b><u>NATURE OF THE ACTION</u></b>

1.    This is an action against Iconix Brand Group, Inc. ("Iconix" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC,

1

17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Iconix by Iconix Acquisition LLC ("Parent") and Iconix Merger Sub Inc. ("Merger Sub"), a wholly-owned subsidiary of Parent. Parent and Merger Sub are affiliates of Lancer Capital, LLC ("Lancer").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company is headquartered in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Iconix common stock.

7. Defendant Iconix is a brand management company that owns and licenses a portfolio of consumer brands in the United States and internationally. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "ICON."

8. Defendant Bob Galvin ("Galvin") is Chief Executive Officer, President, and a director of the Company.

9. Defendant Justin Barnes ("Barnes") is a director of the Company.

10. Defendant Peter Cuneo ("Cuneo") is Chairman of the Board of the Company.

11. Defendant Drew Cohen ("Cohen") is a director of the Company.

12. Defendant James Marcum ("Marcum") is a director of the Company.

13. Defendants Galvin, Barnes, Cuneo, Cohen, and Marcum are collectively referred to herein as the "Individual Defendants."

14. Defendants Iconix and the Individual Defendants are collectively referred to herein as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. The Proposed Transaction

15. On June 11, 2021, Iconix announced that it had entered into a definitive agreement and plan of merger to be acquired by Parent in an all-cash transaction. Upon the terms and subject to the conditions of the agreement, Purchaser will commence a tender offer to acquire all of the outstanding shares of Iconix's common stock for $3.15 per share, in cash. The press release announcing the Proposed Transaction states, in pertinent part:

> **Iconix Enters into Definitive Agreement to be Acquired in "Go Private" Transaction**
>
> June 11, 2021 09:01 ET | Source: Iconix Brand Group, Inc.
>
> NEW YORK, June 11, 2021 (GLOBE NEWSWIRE) -- Iconix Brand Group, Inc. (Nasdaq: ICON) ("Iconix" or the "Company") today announced it has entered into a definitive agreement and plan of merger to be acquired by Iconix Acquisition Corp., an affiliate of Lancer Capital, LLC ("Purchaser"), in an all-cash transaction that values Iconix at approximately $585 million, including net-debt.

3

"Today's announcement represents the culmination of a year-long examination by our Board of Directors of strategic alternatives for the Company," said Bob Galvin, Chief Executive Officer. "After a thorough and deliberative examination of all potential strategic alternatives, the Board of Directors determined that the transaction with Lancer provides the best value for our stockholders. We expect that Iconix will continue developing its brands and supporting its partners as a private company."

Upon the terms and subject to the conditions of the agreement, Purchaser will commence a tender offer to acquire all of the outstanding shares of Iconix's common stock for $3.15 per share, in cash. The offer price per share of common stock represents a premium of 28.6% over Iconix's closing share price on June 10, 2021, the last trading day prior to announcement and a premium of approximately 46.5% over the 30-day average volume weighted share price for the period ended June 10, 2021.

Shares not tendered in the offer will be acquired in a second-step merger at the same cash price as paid in the offer. Closing of the transaction is conditioned upon, among other things, satisfaction of a minimum tender condition, clearance under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and other customary closing conditions. Upon completion of the transaction, Iconix will become a private company. Iconix currently expects the transaction to close before the end of the third quarter of 2021.

The Iconix board of directors has unanimously approved the transactions contemplated by the agreement, and determined that the agreement and the transactions contemplated by the agreement, are fair to, and advisable and in the best interests of the Company and its stockholders, and recommends the Company's stockholders tender their shares in the offer.

Ducera Partners is serving as financial advisor, and Dechert LLP is serving as legal counsel to Iconix. The Purchaser is being advised by Latham & Watkins LLP. Purchaser has obtained a debt financing commitment from Silver Point Capital.

**About Iconix Brand Group, Inc.**

Iconix Brand Group, Inc. owns, licenses and markets a portfolio of consumer brands including: CANDIE'S ®, BONGO ®, JOE BOXER ®, RAMPAGE ®, MUDD ®, MOSSIMO ®, LONDON FOG ®, OCEAN PACIFIC ®, DANSKIN ®, ROCAWEAR ®, CANNON ®, ROYAL VELVET ®, FIELDCREST ®, CHARISMA ®, STARTER ®, WAVERLY ®, ZOO YORK ®, UMBRO ®, LEE COOPER ®, ECKO UNLTD. ®, MARC ECKO ®, ARTFUL DODGER ®, and HYDRAULIC®. In addition, Iconix owns interests in the MATERIAL GIRL ®, ED HARDY ®, TRUTH OR DARE ®, MODERN AMUSEMENT ®, BUFFALO ® and PONY ® brands. The Company licenses its brands to a network of retailers and manufacturers. Through its in-house business

development, merchandising, advertising and public relations departments, Iconix manages its brands to drive greater consumer awareness and brand loyalty.

16. On July 2, 2021, the Company filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

**B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

17. The Solicitation Statement, which recommends that Iconix shareholders tender their shares in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Iconix's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Ducera Partners LLC ("Ducera"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

18. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Background of the Offer and the Merger; (ii) Reasons for the Recommendation; (iii) Opinion of Iconix's Financial Advisor; and (iv) Certain Unaudited Prospective Financial Information.

19. The tender offer in connection with the Proposed Transaction is set to expire at one minute after 11:59 p.m., Eastern time, on July 30, 2021 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Iconix's Financial Projections

20. The Solicitation Statement omits material information concerning Iconix's financial projections.

21. With respect to the "Projections," the Solicitation Statement fails to disclose: (1) all line items underlying (i) Consolidated EBITDA, (ii) Consolidated Adjusted EBITDA, and (iii) Unlevered Free Cash Flow; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

22. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection with the Proposed Transaction.

23. When a company discloses non-GAAP financial metrics in a Solicitation Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

§ 244.100.[1]

24. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning Ducera's Analyses**

25. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Ducera.

26. The Solicitation Statement fails to disclose the following concerning Ducera's "*Discounted Cash Flow Analysis*": (1) all line items underlying the projected unlevered free cash flows for Iconix; (2) Iconix's terminal values; (3) the individual inputs and assumptions underlying the (i) exit adjusted EBITDA multiple ranging from 7.50x – 8.50x, and (ii) discount rates ranging from 11.0% to 13.0% and from 16.0% to 18.0%; and (4) the net present value of Iconix's deferred tax assets.

27. The Solicitation Statement fails to disclose the following concerning Ducera's "*Public Trading Peers Valuation Analysis*": (1) the specific reasons and rationale for selecting only one public peer company for comparison; and (2) the individual inputs and assumptions underlying the multiple range of 7.0x to 8.0x.

28. The Solicitation Statement fails to disclose the following concerning Ducera's "*Analysis of Precedent Transactions*": (1) the specific reasons and rationale for selecting only one

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited July 13, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

transaction for comparison; (2) the date on which the selected transaction closed; (3) the value of the selected transaction; (4) the individual inputs and assumptions underlying the multiple range of 7.5x to 8.5x; and (5) the adjusted EBITDA used in the analysis.

29.     The valuation methods, underlying assumptions, and key inputs used by Ducera in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Ducera's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, the Company's shareholders are unable to fully understand Ducera's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

    **3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

30.     The Solicitation Statement omits material information concerning the sales process leading up to the Proposed Transaction.

31.     The Solicitation Statement provides that, "[d]uring July and August 2020, Ducera communicated with 84 potential counterparties, including Party A, and 28 counterparties entered into confidentiality agreements with Iconix."

32.     The Solicitation Statement, however, fails to disclose the terms of those confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

33.     Without this information, Iconix shareholders may have the mistaken belief that

potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Iconix shareholder would want to know, prior to tendering their shares in connection with the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

34. Additionally, the Solicitation Statement provides that, during the sales process, the Company received proposals and indications of interest from multiple potential buyers.

35. Yet, the Solicitation Statement fails to disclose the terms and values of all offers, proposals, indications of interest, and letters of intent received by the Company during the sales process leading up to the Proposed Transaction.

36. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

37. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

38. Section 14(e) of the Exchange Act states, in relevant part:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

39. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section

14(e) of the Exchange Act.

40. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

41. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

42. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

43. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

44. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

45. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

47. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section

14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

48. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

49. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

50. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

51. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

52. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

53. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

## COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

54. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

58. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C. Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: July 12, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*